IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DWIGHT CURETON, | ) | C/A No. 4:06-1683-RBH-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| COLLIE RUSHTON; and | ) | |
| HENRY MCMASTER, ATTORNEY | ) | |
| GENERAL FOR SOUTH CAROLINA, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

Petitioner, Dwight Cureton, ("petitioner/Cureton"), is an inmate in the custody of the South

Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on June 5, 2006.  Respondents filed a motion

for summary judgment on July 31, 2006, along with supporting memorandum.  The undersigned

issued an order filed August 7, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975),

advising petitioner of the motion for summary judgment procedure and the possible consequences

if he failed to respond adequately. Petitioner filed a response to respondents' motion for summary

judgment on September 18, 2006.

---

[1] This habeas corpus case was automatically referred to the undersigned United States
Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02,
DSC.  Because this is a dispositive motion, this report and recommendation is entered for review
by the district judge.

# I.  PROCEDURAL HISTORY

The procedural history as set out by the respondents has not been seriously disputed by the petitioner. Therefore, the undisputed procedural history as stated by the respondents is set forth herein.

At the February 2001 term, the Greenville County Grand jury indicted petitioner for first degree burglary and assault and battery of a high and aggravated nature ("ABHAN") (01-GS-23-1103 & -1131). (PCR App. 56-57, 59-60).

Petitioner was represented at the trial level by Dorothy Manigault, Esquire.  On September 26, 2002, petitioner pleaded guilty to the charges before the Honorable John Kittredge. Judge Kittredge sentenced petitioner to eighteen (18) years for burglary and a concurrent ten (10) years for ABHAN. (PCR App. 15-16, 58, 61).

A timely notice of appeal was filed from the convictions and sentences. Robert M. Pachak, of the South Carolina Office of Appellate Defense, was appointed to represent petitioner in his direct appeal. On April 11, 2003, Pachak filed an Anders "no merit" Final Brief of Appellant and Petition to be Relieved as Counsel, in which he raised the following issue on behalf of petitioner:

> Whether petitioner's guilty plea complied with the mandates set forth
> in Boykin v. Alabama?

The South Carolina Court of Appeals issued an opinion on December 2, 2003, in which it affirmed the convictions and sentences and granted the motion to be relieved as counsel. State v. Cureton, Unpub. Op. No. 2003-UP-690 (S.C. Ct. App,. 2003). The remittitur was sent down on January 5, 2004.

2

Petitioner filed in Greenville County Court of Common Pleas an Application for Post-Conviction Relief ("APCR"), on September 19, 2003. (PCR App. 25). In the APCR, petitioner raised the following grounds for relief:

Ineffective assistance of counsel. Coerced into plea.

The State filed a Return dated January 24, 2004. (PCR App. 30).

An evidentiary hearing in petitioner's APCR was held on April 22, 2004, before the Honorable Edward W. Miller. Petitioner was represented by Chris Roberts, Esquire. He called himself to testify at the hearing; the State called his trial counsel. (PCR App. 3). Judge Miller orally denied relief at the hearing, and on June 18, 2004, he filed an Order of Dismissal in which he rejected petitioner's claims. (PCR App. 50).

Attorney Roberts timely filed and served a notice of appeal from the denial of relief in the APCR action. Robert M. Pachak, of the South Carolina Office of Appellate Defense, was appointed to represent petitioner in his APCR appeal. On March 7, 2005, Pachak filed a "no merit" Johnson petition for Writ of Certiorari and Petition to be Relieved as Counsel, in which he raised the following issue on behalf of petitioner:

Whether appellant's guilty plea complied with the mandates set forth in Boykin v. Alabama?

Petitioner filed a pro se response to the Johnson Petition for Writ of Certiorari, in which he made his points in a narrative form. The State filed a letter return to the Johnson Petition dated March 9, 2005.

3

The South Carolina Supreme Court issued an Order on April 19, 2006, in which it denied the Johnson Petition and granted counsel's request to withdraw. The Remittitur was sent down on May 5, 2006.

## II. PETITIONER'S GROUNDS FOR RELIEF

In his pro se Petition for Writ of Habeas Corpus, petitioner raises the following grounds for relief, quoted verbatim:

Ground One:    Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charges and the consequences of the plea. Counsel inform me that it didn't matter if I live there or not, that the jury was going to find me guilty and give me a life sentence, and that the jury was waiting right out side and that they will call them in right now.

Ground Two:    Denial of effective assistance of counsel, violation of the Sixth [A]mendment and the federal & U.S. Constitutions. Counsel never investigated the ownership of the property. Counsel didn't do a proper investigation, as to my property and belonging was also in the residence. Counsel misinformed me as to my right's. Counsel encourage me into a guilty plea insteaded[sic] of a trail[sic]. Counsel did no investigation. Counsel was not knowledgeable of the laws and if it had not been for counsel I would have sought a trail [sic].

Ground Three:    Violation of the 14th Amendment of the federal & U.S. Constitution. All of the evidence was never brought before a jury. Therefore I denied due process. The evidence

4

> would have been insufficient to support a verdict of guilty. There exists evidence of material facts not previously presented and heard thereby requiring vacation of the conviction or sentence, and the interests of justice.

(Petition).

### III.  SUMMARY JUDGMENT

On July 31, 2006, the respondents filed a return and memorandum of law in support of their motion for summary judgment. Petitioner responded to the motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## IV.  STANDARD OF REVIEW

Since Cureton filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the

AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

## V. MERITS

### A. GROUND ONE

As set out above, in Ground One petitioner raises the following claim:

Ground One:      Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charges and the consequences of the plea. Counsel inform me that it didn't matter if I live there or not, that the jury was going to find me guilty and give me a life sentence, and that the jury was waiting right out side and that they will call them in right now.

(Petition).

In their memorandum in support of their motion for summary judgment, respondents argue the record reflects the trial judge explained to petitioner the minimum and maximum possible

sentences, and clearly explained the fact that petitioner was giving up his right to a jury trial as well as the accompanying constitutional rights. (PCR App. 5-8). Based on the record, respondents argue it cannot be said the state trial judge and the South Carolina Court of Appeals were objectively unreasonable in finding that petitioner's plea was entered voluntarily and with full awareness of the charges and the consequences of the plea.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). This claim was adjudicated on the merits; therefore, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); See Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can

be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.[2]

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In order to meet the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland's prejudice prong requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination . . . is defective." Instead, an appropriate analysis of prejudice should consider "whether the result of

---

[2] Hill states:

> Although our decision in Strickland v. Washington dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, and was premised in part on the similarity between such a proceeding and the usual criminal trial, the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process. Certainly our justifications for imposing the "prejudice" requirement in Strickland v. Washington are also relevant in the context of guilty pleas.

Hill, 474 U.S. at 56.

9

the proceeding was fundamentally unfair or unreliable." Therefore, a court analyzing the prejudice

prong should not "set aside a conviction or sentence solely because the outcome would have been

different but for counsel's error." See Williams v. Taylor, Nos. 98-14, 98-16, 1998 WL 883336 (4th

Cir. Va. Dec. 18, 1998) (quoting Lockhart, at 369-70).

> The court further held at page 695 that:

> > [A] court deciding an actual ineffectiveness claim must judge the
> > reasonableness of counsel's challenged conduct on the facts of the
> > particular case, viewed as of the time of counsel's conduct . . . the
> > court must then determine whether, in light of all the circumstances,
> > the identified acts or omissions were outside the wide range of
> > professionally competent assistance. (Emphasis added.)

> As set forth above, the first inquiry is whether or not trial counsel committed error. A review

of the PCR hearing transcript reveals the following testimony from petitioner upon direct

examination:

Q:      . . . Did your lawyer give you any opinion what your sentence would be if you went through
a jury trial?

A.      She told me that I could get a life sentence through a jury trial.

Q:      She said you could get a life sentence?

A.      I could get a life sentence by taking a jury trial.

Q:      Okay.

A:      I didn't want no life sentence. I didn't realize I would get 18 years behind that either.

Q:      Did your lawyer tell you what the parameters were for that - - what the guidelines were for
that sort of sentence, what the minimum was and what the maximum - - obviously, the
maximum was a life sentence.

A:      Yeah.

Q:     Did she tell you what the minimum was?

A:     I guess. I think it was 15 years.

Q:     Did she explain that to you?

A:     I think so.

Q:     Okay. So it's your testimony that you didn't understand or that you thought you'd get a life sentence and so you were basically agreeing to this plea on those grounds?

A:     Yeah.

The following colloquy took place during petitioner's cross examination:

Q:     Mr. Cureton, do you recall at your guilty plea the judge asking you a series of questions?

A:     Yeah. Yes, sir.

Q:     And you answered those questions for the judge, didn't you?

A:     Yeah.

Q:     Okay. The judge asked you whether or not anybody had forced or coerced you into pleading guilty?

A.     Right.

Q:     And what did you tell the judge?

A:     No, sir.

Q:     All right. And the judge basically asked you if you were guilty of those charges. What did you tell the judge?

A:     Yes, sir.

Q:     Okay. And the judge asked you if you were testifying truthfully, didn't he?

A:     Yeah, he asked me that.

Q:     And you told him, yes, sir?

A:      Yes, sir.

(PCR App. Tr. 39-42).

A review of the PCR hearing transcript reveals the following testimony from trial counsel

upon direct examination:

Q:      During the course of your representation, do you recall how often you met with him?

A:      I met with Mr. Cureton for a number of times. We came to court several times on an offer for a guilty plea, which he refused. So I would say it was well over six times. . . .

Q.      Okay. And what were the nature of the guilty plea offers Mr. Cureton rejected?

A:      Ms. Foster had offered us a guilty plea to burglary second for ten years.

Q:      And similar deals on the assault and battery?

A:      She was going to dismiss the assault and battery, and we were going just to plead - - if he wanted to take the offer, we would plead to a burglary second for ten years.

Q:      Okay. And do you recall why Mr. Cureton elected or told you that he elected to reject those offers?

A:      In one of his letters he said that he thought that was too much, that he wanted time served, that this matter was not that serious. And he relayed also to me in our visits what he related to the court this morning, that he had stayed at that house before, and he believed that he had the right to go into that house at any time he desired to go in.

Q:      Okay. And, during your discussions with him, did you discuss the possible sentences he could face if he went to trial?

A:      Yes. For the assault and battery of a high and aggravated nature, I told him he could face zero to ten years. The maximum would be ten. For the burglary first, if he went to trial, I told him he would - - the minimum would be 15 and the maximum could be life.

Q:      Okay. And on this- - when he ended up pleading guilty was he on the trial docket or was this - - -

A:      He was on the trial docket. We had - - our case was called. We were getting ready to strike a jury.

12

Q:    And, in your discussions with him, did he indicate why he suddenly elected to take a guilty plea on these charges when he was placed on the trial docket?

A:    We were discussing it in court. And in the lockup area, like this door goes out of the courtroom into a lock up area. We discussed it in the lockup area also. He said that he did not want to take a chance on getting a severe sentence. I told him that he was still looking at a minimum of 15. He asked me about the offer for the ten years. I told him that had been gone, that once we were on the trial docket that offer was gone. He did not want it the several times it was brought up, so we could not ask for that.

Q:    And at any point did you basically attempt to pressure or coerce Mr. Cureton into electing to plead to these charges?

A:    No. I only explained to him what he was facing, and we were ready to go forward to trial.

Upon cross examination, trial counsel testified as follows:

Q:    Okay. Did you recommend to Mr. Cureton that he plead guilty when he entered his plea?

A:    No. I only told him what his options were. I leave the decision to the client always.

Q:    And would that have been the same- -

A:    For Mr. Cureton.

Q:    –Behavior you would have employed when the offer for the burglary second was on the table?

A:    I told him that that was a good offer from what he told me about the case. And after talking with his cousin Antonio Burks, even before we got to trial, Antonio denied that he stayed there. Antonio said that he –Mr. Cureton did not have permission to come in the house, that he may have stayed there when his uncle was alive, but not with him. So I told him all of that, and told him that the - - what he confessed to that the offer was a good offer.

(PCR App. Tr. 43-47).

A review of the PCR order of dismissal reveals that the PCR judge found the following:

> At the hearing, the Applicant testified that he was told he could receive a life sentence on his charges. He claimed that he pleaded guilty because his trial counsel told him he would receive a life sentence if he went to trial. The Applicant alleged that he only spoke to trial counsel once. He stated that he had told his trial counsel that

13

he was the cousin of the home's owner; he said he had lived at the home at times, but never had a key to it. On cross-examination, the Applicant admitted that he had told the trial court that he was guilty and that he had testified truthfully.

The Applicant's trial counsel, Dorothy Manigault, testified that she had met with the Applicant a number of times; he had come up to court several times before his case was finally called to trial. She stated that the Applicant had previously rejected a plea offer of ten years. The Applicant had told her at the time he rejected the offer that he wanted a sentence of time served. Manigault further testified that the Applicant had finally elected to plead guilty because he feared a longer sentence if he had gone to trial. She stated as well that she had spoken to the Applicant's cousin, the homeowner, and he had told her that he would testify that the Applicant did not live with him.

This Court does not find the Applicant's testimony to be credible. Trial counsel's testimony is found credible. This Court finds that trial counsel did inform the Applicant of a prior ten-year plea offer, which the Applicant rejected. Trial counsel did interview the Applicant's cousin, who informed her that the Applicant did not reside with him, thus removing any real defense to the Burglary charge. Both the Applicant and trial counsel testified that the Applicant pled guilty finally because he feared a greater sentence should he go to trial. This Court finds no probative evidence to support the Applicant's allegation that he was forced or coerced into pleading guilty.

Given the above findings, the Applicant has failed to carry his burden of proof in this case. Trial counsel's performance did not fall below reasonable professional standards. Furthermore, the Applicant suffered no prejudice. There is not reasonable probability that the result of the proceeding would have been different but for trial counsel's alleged errors.

(PCR App. 51-53).

A plea of guilty is considered by the court to be a solemn judicial admission that the charges against the defendant are true. The defendant may not later argue that his plea was invalid except in extremely limited circumstances, Blackledge v. Allison, 431 U.S. 63 (1977). The statements

made by a defendant at the time he pleads guilty are taken as conclusive unless he can clearly demonstrate why those statements were not true, <u>Crawford v. United States</u>, 519 F.2d 347, 350 (4th Cir. 1975).

A review of <u>Hill</u>, <u>supra,</u> by the undersigned reveals the court held that, quoted verbatim:

> Although our decision in <u>Strickland v. Washington</u> dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, and was premised in part on the similarity between such a proceeding and the usual criminal trial, the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process.  Certainly our justifications for imposing the "prejudice" requirement in <u>Strickland v. Washington</u> are also relevant in the context of guilty pleas.

<u>Hill</u>, 474 U.S. at 56.

In the present case, a thorough review of the record by the undersigned results in the recommendation that respondents' motion for summary judgment be granted. Specifically, when petitioner's claim for habeas corpus relief is liberally construed, the petitioner does not give any supporting facts to substantiate his claims of ineffective assistance of counsel.  There is nothing in the record to indicate counsel for the petitioner was ineffective. As counsel testified, petitioner had previously turned down a prior plea offer of ten years on several occasions because he wanted a sentence of time served. Counsel testified that petitioner elected to plead guilty once his case was on the docket because he feared a longer sentence had he gone to trial. Petitioner testified at the PCR hearing that counsel told him he could get between fifteen years and a life sentence if he went to trial and was found guilty. Petitioner testified that he pleaded guilty because he did not want a life sentence but he did not realize he would get eighteen years either. Further, petitioner testified that

15

he told the trial judge that he was guilty, that he wanted to plead guilty, and that no-one was coercing him to plead guilty.

The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorney's performance was deficient by showing that her representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him. As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. No genuine issue of material fact has been shown in regard to this issue. Strickland, supra. Additionally, the South Carolina Supreme Court denied the Johnson petition for writ of certiorari.

In conclusion, the undersigned finds that there was no constitutional violation denying effective assistance of counsel as to ground one. The undersigned finds that counsel met the reasonableness test of Strickland, supra. Certainly, petitioner has failed, assuming *arguendo* there was error, to show the result was fundamentally unfair or unreliable.

As to any issue petitioner may be alleging that his plea failed to satisfy the requirement of Boykin v. Alabama, 395 U.S. 238 (1969), this argument fails. In accepting a guilty plea, the court must determine whether it represents an informed intelligent decision by the defendant, Boykin v. Alabama, Id. , after he understands all of the constitutional protections to which he is entitled, as well as the charges against him, Henderson v. Morgan, 426 U.S. 637, 645, n.13 (1976).  At the plea hearing, the defendant must also be advised of the immediate results of his plea, including the maximum sentence he may receive and any mandatory minimum sentence, Manley v. United States, 588 F.2d 79 (4th Cir. 1978).

16

The undersigned reviewed the transcript and concludes that the trial judge complied with Boykin, supra.  It is clear from the trial transcript that the trial judge carefully questioned the petitioner as to his understanding of the plea and to his right to a jury trial.  As well, the trial judge communicated with the trial counsel on these issues.  A review of the plea transcript reveals the following questions by the trial judge and petitioner's responses:

Q:    Have you had sufficient time to discuss these two charges, burglary in the first degree and assault and battery of a high and aggravated nature with your attorney?

A:    Yes, Sir.

Q:    Do you fully understand these charges?

A:    Yes, Sir.

Q:    Are you satisfied with the services of your attorney?

A:    Yes, Sir.

Q:    You have any complaints at all you want to make against Ms. Manigault?

A:    No, sir.

Q:    Sir, is it your desire to plead guilty to these charges at this time?

A:    Yes, Sir.

Q:    Sir, Burglary in the first degree is classified as a violent offense as well as a most serious offense. It carries a penalty minimum of fifteen years up to life imprisonment. Do you understand that?

A:    Yes, Sir.

Q:    The offense of assault and battery of a high and aggravated nature carries a penalty of up to ten years in jail. Do you understand that?

A:    Yes, Sir.

17

Q:     Knowing the maximum penalty associated with each of these offenses do you still wish to plead guilty?

A:     Yes, Sir.

Q:     Are you pleading guilty of your own choice?

A:     Yes, sir.

Q:     Has anybody made any promises or threats to get you to plead guilty?

A:     No, sir.

Q:     Are you pleading guilty because you are guilty?

A:     Yes, Sir.

Q:     Now the burglary first degree as I indicated earlier, Mr. Cureton, has a particular designation as most serious. In other words, this would be a strike against you. And upon your release if you are convicted of another crime designated as most serious you would then receive the penalty of life without parole. Do you understand that?

A:     Yes, Sir.

Q:     If you, upon release, are convicted of two additional offenses which are designated as serious as opposed to most serious that you would then receive the penalty of life without parole. You understand that?

A:     Yes, Sir.

Q:     So there's great significance that attaches to a conviction of a most serious offense such as burglary first. Knowing that do you still wish to go forward with the guilty plea at this time?

A:     Yes, Sir.

Q:     Mr. Cureton, has anyone made any promises or representations to you about when, at what point in sentence you would be eligible for parole?

A:     No, Sir.

Q:     Mr. Cureton, I want you to further understand that if you plead guilty you give up all of your trial rights including your right to a jury trial. Do you understand that?

A:      Yes, Sir.

Q:      We have a jury panel downstairs who is available and ready to hear this case. This case is presented for a trial today witnesses are present. And I want you to understand that if you plead guilty all of the many trial rights that you have available to you, you'll be giving up forever in connection with these two cases by pleading guilty because if you plead guilty there won't be a trial. Do you understand that?

A:      Yes, Sir.

Q:      Mr. Cureton, you are presumed innocent. You are presumed innocent. You have the right to remain silent. The burden of proof is not on you but the state to prove you guilty of each element of these offenses beyond a reasonable doubt. At trial you'd have the services of your fine attorney to confront the witnesses, to question the witnesses, to object to evidence, to challenge the search and seizure of any evidence. You would have the right to assert defenses that may reduce the charges to perhaps eliminate the charges altogether. And although you have the right to remain silent you could if you so desire to testify on your own behalf. Mr. Cureton, you'd further have the right to bring in witnesses on your own behalf. And the court would assist you in that regard. And also very importantly, Mr. Cureton, you would have the right to a jury trial. But if you plead guilty you'll be giving up all those rights. Do you understand that?

A:      Yes, Sir.

Q:      Know that would you rather have a trial on either or both of these charges or do you still want to plead guilty.

A:      Yes, Sir.

Q:      Which one?

A:      Plead guilty.

(Trial transcript app. 5-8).

        After the solicitor stated the facts of the case the judge asked petitioner if the facts as stated by the solicitor as to the two charges were basically true and correct. Petitioner responded that they were and that he wanted to plead guilty to those facts. (Trail Tr. 10). Trial counsel stated that she had met with petitioner, advised him of his rights, and that petitioner wished to waive his right to a jury

trial and plead guilty. (Trial tr. App. 4). Thus, the transcript of petitioner's guilty plea reflects that trial counsel discussed with and explained to petitioner the ramifications of his guilty plea, and that petitioner understood. As set out above, the trial court questioned the petitioner thoroughly about his guilty plea and the possible sentences. (Tr. 4-9). Additionally, the trial court carefully questioned the petitioner as to his understanding of his guilty plea and his right to a jury trial. It is apparent from the trial transcript that the petitioner clearly communicated with the trial judge and clearly understood what he was doing in pleading guilty.

Therefore, based on the above, the undersigned recommends that the respondents' motion for summary judgment be granted on ground one.

## B. GROUND TWO

Petitioner asserts the following as ground two in his habeas petition:

> Ground Two:  Denial of effective assistance of counsel, violation of the Sixth [A]mendment and the federal & U.S. Constitutions. Counsel never investigated the ownership of the property. Counsel didn't do a proper investigation, as to my property and belonging was also in the residence. Counsel misinformed me as to my right's. Counsel encourage me into a guilty plea insteaded[sic] of a trail[sic]. Counsel did no investigation. Counsel was not knowledgeable of the laws and if it had not been for counsel I would have sought a trail [sic].

In this issue, petitioner asserts that trial counsel did not do a proper investigation regarding his property being in the house and the ownership of the house. Further, petitioner alleges his counsel was not knowledgeable as to the law.

20

Respondents argue that a defendant who pleads guilty upon the advice of counsel can only attack the voluntary or intelligent character of his plea by showing ineffective assistance of counsel.

A review of the PCR transcript reveals petitioner testified that he had his stereo equipment in the house and other "values" because he used to stay there on and off but he never had a key to the house. Petitioner testified that he told his attorney that his stereo equipment was in the living room of the house and she said she asked his cousin about it and his cousin told her his uncle had bought the stereo equipment. However, at PCR petitioner testified that his cousin, Antonio Burks, was probably only one year old when he came out of the army and put his stereo equipment in the house. A review of counsel's testimony at the PCR hearing reveals the following colloquy:

Q:     Were you here for Mr. Cureton's testimony this morning?

A:     Yes, I was.

Q:     Did you hear him name an individual named Antonio Burks?

A:     Yes, I did.

Q:     And I think you know who that is, don't you?

A:     Yes, I do.

Q:     Did you speak with him in conjunction with Mr. Cureton's case?

A:     Yes, I did.

Q:     And was he available as a witness for your trial?

A:     He was here the day of the trial. He was actually subpoenaed by the Solicitor's office.

Later in the testimony when talking about the offer to plea before the case was on the docket, counsel testified as follows:

A:     I told him that that was a good offer from what he told me about the case. And after talking with his cousin Antonio Burks, even before we got to trial, Antonia denied that he stayed there, Antonio said that he–Mr. Cureton did not have permission to come in the house, that he may have stayed there when his uncle was alive, but not with him. So I told him all of that, and told him that the –what he confessed to that the offer was a good offer.

(PCR APP. Tr. 46-47).

As set out above, the PCR judge in the order of dismissal found counsel had spoke with petitioner's cousin, the homeowner, and the cousin told counsel he would testify that petitioner did not live with him. Further, the PCR judge concluded counsel did inform petitioner of the plea offers which he rejected and did interview petitioner's cousin who informed her that petitioner did not reside with him, thus removing any real defense to the Burglary charge. Both petitioner and trial counsel testified that petitioner pleaded guilty finally because he feared a greater sentence should he go to trial.

The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorney's performance was deficient by showing that her representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him. Trial counsel questioned petitioner's cousin who stated petitioner did not live with him and he was subpoenaed to testify for the state. Thus, there was no defense. Petitioner did not testify, present material evidence, or present any other witness at the PCR hearing to show that he would have had a defense. As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. No genuine issue of material fact has been shown in regard to this issue. Strickland, supra.

22

In conclusion, the undersigned finds that there was no constitutional violation denying effective assistance of counsel as to ground two. The undersigned finds that counsel met the reasonableness test of <u>Strickland</u>, <u>supra</u>. Certainly, petitioner has failed, assuming *arguendo* there was error, to show the result was fundamentally unfair or unreliable in that he did not present testimony from his cousin which counsel testified she did question or any other witnesses to testify on his behalf that counsel failed to interview. As to the allegation within this issue that counsel was not knowledgeable as to the laws, petitioner has failed to present any evidence to support this allegation. Therefore, based on the above, the undersigned recommends that the respondents' motion for summary judgment be granted on this issue.

## **GROUND THREE**

Petitioner asserts the following as ground three in his habeas petition:

Ground Three: Violation of the 14th Amendment of the federal & U.S. Constitution. All of the evidence was never brought before a jury. Therefore I denied due process. The evidence would have been insufficient to support a verdict of guilty. There exists evidence of material facts not previously presented and heard thereby requiring vacation of the conviction or sentence, and the interests of justice.

(Petition).

Respondents assert that this ground is procedurally barred because it was never raised at the plea hearing, during the direct appeal, or at the PCR trial level. Further, respondents assert these issues were not ruled upon by the PCR trial judge and, thus, would not have been preserved for review during PCR appeal. As respondents have raised the issue of procedural bar, the undersigned will set forth a discussion on both procedural bar and exhaustion.

## DISCUSSION AS TO EXHAUSTION AND PROCEDURAL BAR

The failure to raise a claim in the first state post-conviction petition as required by state law provides an adequate state procedural ground for denying federal habeas corpus relief. See Murch v. Mottram, 409 U.S. 41, 46 (1972); Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990), cert. denied, 499 U.S. 982 (1991); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1998). Similarly, if a petitioner before a federal court fails to raise a claim in state court and is precluded by state procedural rules from returning to state court to raise the issue, he has procedurally by-passed his opportunity for relief in state courts. In such a case, the exhaustion requirement is technically met, but a federal district court is barred from considering the habeas claim, absent a showing of cause and actual prejudice. Coleman v. Thompson, supra. The procedural default doctrine and its attendant "cause and prejudice" standard are grounded in comity and federalism concerns. Id. at 730-31. These principles apply whether the default occurred at trial, on appeal, or on state collateral attack. Murray v. Carrier, supra.

Thus, a prisoner must demonstrate cause for his state court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the claim's merits. Counsel's ineffectiveness in failing properly to preserve a claim for state court review will suffice as cause, but only if that ineffectiveness itself constitutes an independent constitutional claim. Id. at 489-97. The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim, before it can be used to establish cause for a procedural default. Id. at 489. The doctrine's purposes would be

frustrated if federal review were available to a prisoner who had presented his claim in state court, but in such a manner that the state court could not, under its procedural rules, have entertained it. Id.

In Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997), the Fourth Circuit Court of Appeals set forth the exhaustion requirements under Section 2254:

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a §2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts . . .
>
> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner.
>
> The exhaustion requirement, though not jurisdictional, is strictly enforced . . .

Id. at 910-911 (citations omitted).

In order to exhaust his claims in state court, a South Carolina petitioner must file an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10 to 17-27-160. "Exhaustion includes the filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review." Gibson v. State, 495 S.E.2d 426, 428 (S.C. 1998).

If a petitioner before a federal court fails to raise a claim in state court and is precluded by state procedural rules from returning to state court to raise the issue, he has procedurally by-passed his opportunity for relief in state courts. In such a case, the exhaustion requirement is technically met, but a federal district court is barred from considering the habeas claim, absent a showing of

25

cause and actual prejudice. <u>Coleman v. Thompson</u>, 501 U.S. at 750. The procedural default doctrine and its attendant "cause and prejudice" standard are grounded in comity and federalism concerns. <u>Id</u>. at 730-31. These principles apply whether the default occurred at trial, on appeal, or on state collateral attack. <u>Murray v. Carrier</u>, 477 U.S. at 490-92. Furthermore, in the absence of cause and prejudice, the petitioner must show that he is factually "actually innocent" in order to have his claim heard on collateral review. <u>Bousley</u>, 523 U.S. at 622-24. "To establish actual innocense, petitioner must demonstrate that, 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." <u>Id</u>. At 623 (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327-328 (1995) (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142, 160 (1970)).

Once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. <u>Kornahrens v. Evatt, supra.</u> The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. <u>See Karsten v. Kaiser Foundation Health Plan</u>, <u>supra</u>. Once a court has determined that a claim is procedurally barred, it should not stray into other considerations. Therefore, it is recommended that these issues (grounds one and three) be dismissed as procedurally barred.

If petitioner is raising ground three outside of the ineffective assistance of counsel argument, this claim would be procedurally barred. If petitioner is raising this claim under the ineffective assistance of counsel argument, then the undersigned finds that it is not procedurally barred. This issue as to ineffective assistance of counsel was generally raised at PCR by alleging that counsel

failed to interview his cousin. Petitioner failed to identify what other evidence was not presented or why the evidence would be insufficient to support a conviction.  The issues as to ineffective assistance of counsel was addressed above in grounds one and two and recommended that the issues be dismissed.  As to any claim outside of the ineffective assistance of counsel claim, the undersigned recommends that it be dismissed as procedurally barred.

Second, respondents argue that petitioner's guilty plea waives his right to challenge the sufficiency of the evidence when he pleaded guilty. As a freestanding claim, respondents argue this issue fails.

A guilty plea waives nearly all non-jurisdictional claims with the exception of ineffective assistance of defense counsel and the voluntariness of the plea. Johnson v. Catoe, 520 S.E.2d 617, 619 (S.C. 1999); Gibson v. State, 514 S.E.2d 320, 324 (S.C. 1999). A plea of guilty is considered by the court to be a solemn judicial admission that the charges against the defendant are true.  The defendant may not later argue that his plea was invalid except in extremely limited circumstances, Blackledge v. Allison, 431 U.S. 63 (1977)( explaining that in a very limited number of cases the court will allow a defendant's challenge to his plea on the basis that the plea was "the product of such factors as misunderstanding, duress, or misrepresentation by others," though the allegations must be concrete and specific).  "The accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so." Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975).[3]  The Court in Tollett, supra held the following:

_____

[4] See also Bemis v. United States, 30 F.3d 220, 222-23 (1st Cir.1994)(observing general rule that a defendant pursuing habeas relief is "ordinarily bound by his or her representations in

We thus reaffirm the principle recognized in the Brady trilogy: a
guilty plea represents a break in the chain of events which has
preceded it in the criminal process. When a criminal defendant has
solemnly admitted in open court that he is in fact guilty of the offense
with which he is charged, he may not thereafter raise independent
claims relating to the deprivation of constitutional rights that occurred
prior to the entry of the guilty plea. He may only attack the voluntary
and intelligent character of the guilty plea by showing that the advice
he received from counsel was not within the standards set forth in
McMann.

A guilty plea, voluntarily and intelligently entered, may not be
vacated because the defendant was not advised of every conceivable
constitutional plea in abatement he might have to the charge, no
matter how peripheral such a plea might be to the normal focus of
counsel's inquiry. And just as it is not sufficient for the criminal
defendant seeking to set aside such a plea to show that his counsel in
retrospect may not have correctly appraised the constitutional
significance of certain historical facts, McMann, supra, it is likewise
not sufficient that he show that if counsel had pursued a certain
factual inquiry such a pursuit would have uncovered a possible
constitutional infirmity in the proceedings.

Tollett, 411 U.S. 266-267. "Absent clear and convincing evidence to the contrary, [petitioner] is

bound by the representations made during his plea colloquy." Beck v. Angelone, 261 F.3d 377, 396

(4th Cir. 2001)(internal quotations and citations omitted).

Therefore, if this issue is outside the argument of ineffective assistance of counsel and,

assuming *arguendo* it is found not to be procedurally barred, it would be waived due to the guilty

---

court" vis-a-vis a plea); United States v. Butt, 731 F.2d 75, 80 (1st Cir.1984)(affirming denial of
habeas motion without a hearing, concluding that the movant's allegations that his attorney had
mislead him concerning the judge's acceptance of the plea were "unsupported by specific facts
and contradicted by the record," the habeas motion being bare of "credible, valid reasons why a
departure from [his] earlier contradictory statements is ... justified," citing Crawford v. United
States, 519 F.2d 347, 350 (4 th Cir.1975)); Larrivee v. Warden, Me. State Prison, 2000 WL
760971,* 6 (D.Me.2000) ("A defendant's representation at the plea hearing are a 'formidable
barrier' in collateral proceedings in which he attempts to take a different position.").

plea. As stated above, if this argument is construed within the ineffective assistance of counsel argument, petitioner has failed to prove ineffective assistance of counsel pursuant to <u>Strickland</u> as discussed in detail under grounds one and two above. Therefore, it is recommended that this issue be dismissed.

In conclusion, the undersigned finds that there was no constitutional violation  and that the plea was voluntarily made. Petitioner has failed to show an unreasonable application of federal law. He pleaded guilty and avoided the possibility of going to trial and receiving a life sentence if found guilty. The record supports the PCR court's finding that petitioner failed to show that his guilty plea was not freely and voluntarily entered in this case.  Thus, the undersigned recommends that the respondents' motion for summary judgment be granted.

## VI.  CONCLUSION

Based on the reasons set out above, it is RECOMMENDED that respondents' motion for summary judgment (document # 8) be GRANTED.

Respectfully Submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 16, 2007
Florence, South Carolina


**The parties' attention is directed to the important notice on the next page.**

29